Vanessa R. Waldref
United States Attorney
Brian M. Donovan
Assistant United States Attorney
Post Office Box 1494
Spokane, Washington  99210-1494
Telephone:  (509) 353-2767

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  vs.<br><br>SAMI ANWAR,<br><br>    Defendant. | No. 4:18-CR-06054-EFS-001<br><br>UNITED STATES OF AMERICA'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE |

The United States of America, by and through Vanessa R. Waldref, United States Attorney, and Brian M. Donovan, Assistant United States Attorney, submits the following in response to the Court's Order to Show Cause and Placing Hold on Defendant's Inmate Trust Account. ECF No. 301.

**A. BOP Inmate Account Information**

The Court requests that the United States present "evidence regarding the sources, the amounts, [and] the timing of the deposited sums comprising Defendant's trust-account balance." *Id.* at 2. Based on information obtained from the Bureau of Prisons (BOP), the United States can represent the following:

  A. The Defendant entered BOP custody on or about October 22, 2020.

  B. On October 22, 2020, $615.97 was deposited in Defendant's inmate trust account from an "unknown" source. *See* Exhibit B to the Declaration of Therese Roberson. The United States has not determined the source of that deposit, but believes based on conversations with BOP that those specific funds were amounts

UNITED STATES OF AMERICA'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE - 1

previously held in Defendant's account at Benton County Jail, which were then transferred and deposited when Defendant was taken into BOP custody.

C. From November 2, 2020, through October 21, 2021, Defendant received 24 deposits ranging from $100 to $600 from his spouse and individuals who appear to be family or friends. *Id.* Eighteen of the deposits from his wife, family, or friends were in the amount of $300. *Id.* Since October 21, 2021, Defendant has received only one deposit from family or friends in the amount of $200 on May 29, 2022. *Id.*

D. Defendant received two deposits of $27.90 on June 8, 2022, and July 8, 2022, for a total of $55.80. *Id.* These two deposits are his earned prison wages. *See* Decl. of Roberson, ¶ 5. They are the only prison wage deposits he has received in his inmate trust account during his period of incarceration.

E. The BOP ledger does not reflect any small deposits of periodic payments, similar to prison wages, received by the Defendant.

F. The BOP ledger indicates that during his period of incarceration, funds have been transmitted out of the Defendant's account to pay his monetary penalties (totaling $150), to pay for books ($5), and to pay medical co-pays. *See* Decl. Roberson, Exhibit B; Decl. Roberson, ¶ 6. The ledger does not reflect amounts spent by Defendant at the commissary.

G. In sum, since October 22, 2020, Defendant has received a total of $8,701.77 in his inmate trust account. *Id.* In that same amount of time, he has paid only $150 towards his monetary penalties imposed by the Court's judgment.

**B.     Legal Argument**

Section 3664(n) states that an inmate who "receives substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration, … shall be required to apply the value of such resources to any restitution … still owed." 18 U.S.C. § 3664(n) (emphasis added). The phrase "from any source" is key to evaluating § 3664(n) and should not be overlooked.

UNITED STATES OF AMERICA'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE - 2

It is difficult to conceive of language that more strongly suggests a broad meaning for "substantial resources" than "from any source." *See, e.g., Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 220 (2008) ("Congress's use of 'any' to modify 'other law enforcement officer' is most naturally read to mean law enforcement officer of whatever kind," despite statute's immediately preceding specific reference to "any officer of customs or excise."). "Starting with this focus, the government's position – 'any source' means any source -- is strong." *United States v. Kidd*, 23 F.4th 781, 786 (8th Cir. 2022). "Read naturally, the word 'any' has an expansive meaning, that is, one or some indiscriminately of whatever kind". *Id.* quoting *United States v. Gonzales*, 520 U.S. 1, 5, 117 S.Ct. 1032, 137 L.Ed.2d 132 (1997) (cleaned up).

In the unpublished decision, *United States v. Poff*, 781 F. App'x 593 (9th Cir. 2019), the Ninth Circuit adopted the Fifth Circuit's analysis that § 3664(n) "refers to windfalls or sudden financial injections ... that become 'suddenly available' " to the defendant. *United States v. Hughes*, 914 F.3d 947, 951 (5th Cir. 2019). In doing so, the Court applied the *noscitur a sociis* canon to limit the interpretation of the phrase "from any source." *Poff*, 781 F. App'x at 594.

*Poff* suggests that had Congress meant to reach non-windfall payments, it would not have included the listed examples of "inheritance, settlement, or other judgment." The Court equated "inheritance, settlement, or other judgment" to "windfalls" or "sudden financial injections," but it is not necessarily the case that these terms are even windfalls. An inheritance could be paid out slowly by an estate, particularly to a potential spendthrift heir, judgments are often collected over time as debtors' income and assets permit, and structured settlements provide periodic payments, not "windfalls." *See Legal Econ. Eval., Inc. v. Metro. Life Ins. Co.*, 39 F.3d 951, 953 (9th Cir. 1994). Had Congress meant to limit "substantial resources" to "windfalls" in section 3664(n), there would be no reason to include, and strong reason to omit, the phrase "from any source." Section 3664(n) is best understood in a belt-

UNITED STATES OF AMERICA'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE - 3

and-suspenders fashion. Rather than limiting "substantial resources from any source," the specific examples ensure that even an inheritance from a recently deceased loved one, or a settlement or judgment payment for a personal injury or civil rights claim, must also be applied to the debtor's restitution obligation.

In the published decision *United States v. Kidd*, 23 F.4th 781 (8th Cir. 2022), the Eighth Circuit criticized *Poff's* interpretation of the *noscitur a sociis* canon and a adopted a more reasonable interpretation of § 3664(n).

> "The maxim *noscitur a sociis* ... while not an inescapable rule, is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to the Acts of Congress." *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307, 81 S.Ct. 1579, 6 L.Ed.2d 859 (1961); *see Maracich v. Spears*, 570 U.S. 48, 62-63, 133 S.Ct. 2191, 186 L.Ed.2d 275 (2013). The difficulty here is that the words at issue, "any source," are a general term that is stated to "include" more specific associates, "inheritance, settlement, or other judgment." When the specific words in a list are followed by a general term, such as "and all other persons," courts generally apply the *ejusdem generis* canon -- "where general words follow an enumeration of two or more things, they apply only to persons or things of the same general kind or class specifically mentioned." Scalia & Garner at 199. But where the general words precede the specifics, as here, only the more general *noscitur a sociis* canon applies. <u>And where the specifics are preceded by the word "including," or "including without limitation," as in § 3664(n), "[f]ollowing the general term with specifics can serve the function of making doubly sure that the broad (and intended-to-be-broad) general term is taken to include the specifics."</u> *Id*. at 204. We conclude that is the more logical interpretation of § 3664(n). Thus, we cannot agree with the Fifth and Ninth Circuits that § 3664(n) refers only to "windfalls or sudden financial injections." But that does not answer the question whether, given the statute's context, it applies to accumulations of prison wages.

*Kidd*, 23 F.4th at 786–87 (emphasis added).

UNITED STATES OF AMERICA'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE - 4

Despite disagreeing with *Poff's* conclusion about "windfalls" and "sudden financial injections," the Court in *Kidd* ultimately agreed with *Poff* and *Hughes* that § 3664(n) does not apply to the accumulation of prison wages. *Id.* at 787. "The inference from that wording is that Congress focused on single transactions from outside sources, not the $18 per month paid by the government into Kidd's inmate trust account for his prison wages." *Id*. The Government urges this Court to adopt the interpretation of § 3664(n) articulated in *Kidd* and agrees that the appropriate focus of § 3664(n) is amounts deposited from outside sources, such as the case here, and not accumulated prison wages. *See also United States v. Black,* 2022 WL 1011676, *2 (7th Cir. Apr. 5, 2022) ("the list in § 3664(n) is non-exhaustive, and [courts] have held that the provision permits seizure of funds from any source—no matter how acquired or for what purpose—to satisfy restitution.").

The Government further notes that despite its apparent broad adoption of *Hughes'* finding that § 3664(n) only applies to "windfalls or sudden financial injections," the decision in *Poff* is ultimately focused primarily on the accumulation of prison wages in the defendant's account. The inmate's account in *Poff* consisted of prison wages and VA disability payments. *Poff, supra,* at 595. The Court drew a clear distinction between these two sources of funds. It unequivocally stated, "[t]o the extent any of Poff's $2,663.05 account balance is comprised of accumulated prison wages, we agree with the Fifth Circuit that those funds do not qualify under § 3664(n)." *Id.* In the next sentence, however, it equivocated on whether the periodic disability payments could be turned over under § 3664(n) and left that issue for the district court to decide. *Id.* Had *Poff* determined that the periodic disability payments were also barred from collection under § 3664(n), it would have clearly said so.

*Poff's* focus on excluding prison wages from collection under § 3664(n) rather than other sources of funds is further supported by two other small, but instructive, pieces of information. First, in *Poff*, upon remand the parties stipulated and agreed that

UNITED STATES OF AMERICA'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE - 5

$500 should be returned to the defendant, but collection of the remainder of the funds in the inmate account, which consisted of the periodic VA disability payments, was proper under § 3664(n). *See* Attachment 1. This indicates the parties themselves believed that *Poff's* holding was limited to prison wages. Second, in the case *United States v. Henrikson*, 20-30252, D.C. No. 2:14-cr-00124-SMJ-1 (9th Cir.), the Ninth Circuit's *sua sponte* order appointing counsel to assist with an appeal of an order granting a motion to turnover inmate funds specifically directed appointed counsel to "address whether any of the funds seized from Henrikson's inmate trust account were comprised of accumulated prison wages and, if so, whether those wages were properly ordered transferred to the government under 18 U.S.C. § 3664(n)." *See* Attachment 2. While not dispositive, if the Ninth Circuit had concerns about other types of deposits into the inmate trust account beyond prison wages, it would have directed appointed counsel to address that issue as well.

Here, the BOP ledger demonstrates that the funds in Defendant's inmate account, except for $55.80, consists of relatively large deposits of hundreds of dollars from family or friends. The funds are not small, accumulated wages from his work or similar activity. Moreover, at least one court has held that turnover of inmate funds consisting of deposits from an inmate's family or friends for living expenses is appropriate if it constitutes a "substantial" sum. *See Black*, 2022 WL 1011676, *2.

Section 3664(n) should also be viewed in the broader context of restitution generally. The overwhelming goal of restitution is to make victims whole. The Crime Victims' Rights Act, 18 U.S.C. § 3771(a)(6) ("CVRA"), codifies a victim's "right to full and timely restitution as provided in law." To enforce victims' rights to full and timely restitution, Congress passed the Mandatory Victims Restitution Act, 18 U.S.C. § 3663A, *et seq.* ("MVRA"). The MVRA's "broad general purpose" is to ensure "'that victims of crime receive full restitution.'" *Lagos v. United States*, 138 S. Ct. 1684, 1689, 201 L. Ed. 2d 1 (2018) (quoting *Dolan v. United States*, 560 U.S. 605, 612, 130

UNITED STATES OF AMERICA'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE - 6

S.Ct. 2533, 177 L.Ed.2d 108 (2010)). Moreover, Congress's intent behind the MVRA was that "restitution be a compensatory remedy from the *victim's perspective*." *United States v. Korbe*, 2020 WL 1929256, at *5 (W.D. Pa. Apr. 21, 2020) *citing United States v. Petruk*, 484 F.3d 1035, 1038 (8th Cir. 2007) (emphasis in original) ("Thus, when defining what is or isn't "substantial" under the MVRA, the Court is to look at the issue from the victim's perspective (here, the widow of an FBI agent), not the defendant's perspective.")

The Ninth Circuit's previous interpretations of the MVRA in light of its purpose to enhance recovery of restitution is instructive.  For example, in *Partida v. U.S. Dep't of Justice (In re Partida)*, 862 F.3d 909, 913 (9th Cir. 2017), this Court held that the MVRA overrides the Bankruptcy Code's automatic stay and relied on the MVRA's purpose to "simplify and strengthen the government's [restitution] collection efforts."  And in *United States v. Novak*, 476 F.3d 1041, 1043 (9th Cir. 2007) (en banc), this Court held that the MVRA overcomes statutory protections for retirement accounts, relying in part on Congress's "weighty policy determination" that the justice system must "'recognize the impact that crime has on the victim, and, to the extent possible, ensure that [the] offender be held accountable to repay these costs.'") (*quoting* S. Rep. No. 104-179, at 18 (1995)).

The MVRA grants the United States a broad array of collection powers and tools. In particular, an order of restitution automatically grants the United States a lien against <u>all</u> of the Defendant's property and rights to property. 18 U.S.C. § 3613(c). It grants the United States the power to collect against any property, "[n]otwithstanding any other Federal law," except for a very narrow list of exemptions. 18 U.S.C. § 3613(a). Importantly, cash held in an inmate trust account does not fit within any category of exempt property under § 3613(a)(1). The MVRA also includes the general power to collect restitution "by all other available and reasonable means." *See* 18 U.S.C. § 3664(m).

UNITED STATES OF AMERICA'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE - 7

Thus, as in *Partida* and *Novak*, the Court may properly invoke the MVRA's purpose, and take into consideration the tools it provides the United States to enforce that purpose, to bolster its textual analysis of § 3664(n). Therefore, the phrase "from any source" employed by Congress in § 3664(n) should be interpreted more broadly in light of Congress's overall intent in the MVRA and CVRA to provide sufficient collection tools to make victims whole. *See generally Kidd,* 23 F.4th at 786–87.

A broad interpretation of § 3664(n) which takes into account the goals of the CVRA and MVRA, as well as the interest of the victims, is well-warranted here. As noted above, since October 22, 2020, Defendant has received a total of $8,701.77 in his inmate trust account and he has paid only $150 towards his monetary penalties. Pursuant to 18 U.S.C. § 3612(c)(1), payments are first applied to the mandatory special assessments before funds are remitted to victims. In this case, the total amount of special assessments imposed is $4,700. ECF No. 241. Therefore, despite having received substantial resources of $8,701.77 in his inmate account since October 2020, Defendant continues to owe $4,550 in special assessments to the Court, and his victims have received $0 in restitution. *See* Decl. of Roberson, Exhibit A.

At the Defendant's current rate of payment, $25 per quarter, it would take 182 quarters, or 45 ½ years, to pay off just the special assessments imposed in this case. In other words, it would be 45 ½ years before the victims would receive $1.00 of restitution. Of course, Defendant will be released from custody sooner than 45 ½ years. Based on his anticipated release date of February 1, 2049, Defendant has approximately 106 quarters remaining in custody. At $25 per quarter, he would only pay an additional $2,650 towards the special assessments between now and his release date, leaving a balance of $1,900 owed on his special assessments upon his release 26.5 years from now. Thus, if the United States is not permitted to recover the substantial funds in Defendant's inmate account, the Defendant could exit prison in

UNITED STATES OF AMERICA'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE - 8

2049 still owing special assessments to the Court, and the victims would still be waiting to receive any money for restitution.

In light of this, an order requiring the turnover of the funds in Defendant's inmate account, less $500[1] (approximately $2,511.44), would clearly be substantial and important to the collection of restitution to the victims. A payment of $2,511 <u>is more than 25 years</u> of payments at the Defendant's current rate. Speeding up recovery of restitution to the victims by 25 years through a reasonable interpretation of § 3664(n) would be incredibly meaningful to the victims, enhance the enforcement of this Court's order imposing restitution, and further the goals of the MVRA.

### C.  In The Alternative, The Court Can Order Payment Pursuant to 18 U.S.C. § 3664(k)

Alternatively, the turnover of Defendant's inmate funds is authorized under 18 U.S.C. § 3664(k). Under § 3664(k), "[a] district court has discretion to modify an order of restitution when there is a 'material change in the defendant's economic circumstances that might affect the defendant's ability to pay restitution.'" *United States v. Grigsby*, 665 F. App'x 701, 706 (10th Cir. 2016) (quoting 18 U.S.C. § 3664(k)). A material change may be brought to a court's attention by the government, the defendant, or the victim. *Id.* Upon receipt of such notice, "the court may, on its own motion, or the motion of any party, including the victim, adjust the payment schedule, or require immediate payment in full, as the interests of justice require." 18 U.S.C. § 3664(k). Notably, the use of § 3664(k) as a potential avenue for payment was highlighted as a potential option in *Poff*. *See Poff, supra*, at 595 ("We leave it to the district court on remand to determine … if disability benefits payments constitute a "material change in the defendant's economic circumstances," better addressed pursuant to § 3664(k), which provides a mechanism for the court to "adjust the

---

[1] In accordance with the Court's Order allowing $500 to be accessed by the Defendant. ECF No. 301.

UNITED STATES OF AMERICA'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE - 9

[restitution] payment schedule, or require immediate payment in full, as the interests of justice require.").

At no point has the Defendant notified the Court or the United States of any material change in his income despite having received $8,701.77 in his inmate trust account. Conversely, the Government has now notified the Court of Defendant's possession of $3,011.44, which constitutes a material change in his economic circumstances justifying the immediate payment in partial satisfaction of his monetary penalty obligations. Thus, Defendant's payment schedule could be adjusted to require a payment of the funds in his inmate trust account, less $500, to satisfy part of his outstanding monetary penalties.

### D. Conclusion

Based on the foregoing, the United States requests that the Court grant its motion and order that the BOP turn over all of the funds in the Defendant's inmate trust account, less $500 to remain in the Defendant's account, to the Clerk of Court to be applied to partially satisfy the Defendant's monetary penalties.

DATED August 4, 2022.

Vanessa R. Waldref
United States Attorney

 *s/ Brian M. Donovan*
Brian M. Donovan
Assistant United States Attorney

UNITED STATES OF AMERICA'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE - 10

# CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following CM/ECF participant(s):

Jeffry Finer
Attorney for Sami Anwar
jfiner@ksblit.legal

>                           *s/ Brian M. Donovan*
>                           Brian M. Donovan
>                           Assistant United States Attorney