FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 04, 2025

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 4:18-cr-6054-EFS-1 |
| Plaintiff/Respondent, | [No. 4:23-cv-5083-EFS] |
| v. | |
| SAMI ANWAR, | **ORDER DENYING THE FINAL GROUNDS IN PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO TITLE 28 U.S.C. § 2255** |
| Defendant/Petitioner. | |

Before the Court is the unadjudicated portion of Petitioner Sami Anwar's Motion to Vacate, Set Aside, or Correct Sentence, consisting of Ground One, subclaims two, eleven, and fifteen.[1] Mr. Anwar asserts vacatur of his sentence is appropriate under 28 U.S.C. § 2255, the Fifth Amendment Due Process Clause, and *Strickland v. Washington*, 466

---

[1] *See* ECF Nos. 306, 341.

ORDER - 1

U.S. 668 (1984), due to alleged ineffective assistance of counsel during plea negotiations and during sentencing.  The Court has reviewed the record and pleadings and conducted an evidentiary hearing at which the Court carefully listened to the testimony of witnesses and observed their tone, demeanor, body language, and choice of words.  The Court finds that the testimony of Assistant United States Attorney Tyler Tornabene, FDC Investigator Craig Tom, and Gary Metro, who was trial and sentencing defense counsel, to be credible on all material points; the Court finds Mr. Anwar's testimony to be incredible on all material points. Based upon the testimony and pleadings, the Court concludes that Mr. Anwar failed to meet his burden to show that his Mr. Metro's representation of him fell below the standards of *Strickland*.  Accordingly, the Court DENIES Mr. Anwar's Section 2255 Motion as to all remaining counts for the reasons stated below.

## A.    Background

On November 9, 2018, after his Indictment on forty-seven counts: one count of conspiracy to commit wire fraud pursuant to 18 U.S.C. § 1349; one count of conspiracy to commit mail fraud pursuant to 18 U.S.C. § 1349; twenty-three counts of wire fraud pursuant to 18 U.S.C.

§ 1343; fifteen counts of mail fraud pursuant to 18 U.S.C. § 1341; six counts of fraudulently obtaining controlled substances pursuant to 21 U.S.C. § 843(a)(3); and one count of furnishing false or fraudulent material information pursuant to 21 U.S.C. § 843(a)(4)(A), Mr. Anwar entered a plea of not guilty to all counts and was detained.

On November 30, 2018, the Government moved to add additional pre-trial conditions, alleging that recordings from the jail phone established that while in custody Mr. Anwar had made over five hundred telephone calls and was using the telephone as a means of harassing and intimidating witnesses. At a hearing on that motion,[2] the Government presented evidence of threats made by Mr. Anwar. The Court granted that motion in part and restricted Mr. Anwar's phone use.[3] The Court found the restrictions were reasonably related to an important government interest: preventing witness intimidation.

---

[2] ECF No. 40.

[3] ECF No. 50.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

On February 5, 2019, the Government filed a Superseding Indictment to which Mr. Anwar again entered a plea of not guilty to all counts.

On May 17, 2019, the Government attorneys met with Mr. Anwar and Mr. Metro and over the course of one hour and forty-five minutes, made a "reverse proffer" presentation to them, including one-hundred and twenty-eight Power Point slides to demonstrate the strength of the Government's case including the testimony that Dr. Nand, Dr. Megna, former employees of Mr. Anwar's businesses and FDA investigators would give at trial.[4] The presentation included a calculation of the likely sentence under the Sentencing Guidelines.[5] The government then offered Mr. Anwar a plea deal. Present and participating at that reverse proffer were AUSA Dan Fruchter, AUSA Tornabene, and Investigator Tom. Mr. Tornabene and Investigator Tom testified at the 2255 hearing that Mr. Anwar was present for the entire presentation.

---

[4] ECF No. 355 (Habeas evidentiary hrg. Tr. at 360:24–382:18).

[5] *Id.* at 378:14–379:1, 379:13.

ORDER - 4

Following that May 17, 2019 reverse proffer, Mr. Anwar appeared in court for hearings on June 11, 2019, August 13, 2019, and October 10, 2019, during which he did not state or give any indication that he was dissatisfied with Mr. Metro's representation or that he wanted to plead guilty or had signed a Plea Agreement. It is not uncommon for defendants in criminal cases who are dissatisfied with counsel to write to the Court expressing dissatisfaction with their attorney's representation  or to express that dissatisfaction when in court for a hearing. Mr. Anwar did not do that at any of these court appearances.

Over the course of the following months, the Government provided thousands of pages of discovery to Mr. Metro and Mr. Anwar. [6]

---

[6] ECF Nos. 53, 54. Status Report of Mr. Fruchter indicating 25,597 pages of discovery were available and ready for download by defense counsel and an additional 30,000 pages would be available within one week.

At a pre-trial hearing on August 13, 2019, the Court inquired of Mr. Anwar whether he was aware of the evidence the Government said it would use at trial to convict him, and he said he was.[7]

On November 4, 2019, the trial commenced. During the days that followed, the Government elicited testimony from five different physicians, who had worked with Mr. Anwar at varying times, that Mr. Anwar had engaged in fraudulent use of their credentials in clinical studies, had forged their signatures despite demands that he refrain from doing so, had engaged in a pattern of harassment and retaliation when they objected or resisted his forgery of their signature, sending and receiving emails in their names, impersonating them on telephone calls and conducting studies in their names without their permission or knowledge. The Government also elicited testimony from several former employees that Mr. Anwar had directed them to engage in fraudulent activities in clinical studies and had harassed them and attempted to intimidate them to coerce their continued participation in these fraudulent activities. The Government also

---

[7] ECF No. 15, pg. 8:1-23.

ORDER - 6

introduced thousands of pages of physical evidence, including emails, text messages, and photographs retrieved from Mr. Anwar's cell phone. The testimony elicited and exhibits admitted were consistent with the material and representations made during the reverse proffer presentation of May 17, 2019.

On November 22, 2019, after deliberating over two days, the jury found Mr. Anwar guilty of all the forty-seven counts in the Superseding Indictment.[8]  As relevant to the current habeas issues being analyzed, the Court notes that Mr. Anwar recently stated that he had been aware that, if he was convicted of a felony, he would automatically be disqualified from participating in clinical trials.[9]

A Presentence Investigation Report (PSIR) was filed. Beginning on September 30, 2019, after several COVID-19 related continuances,[10] the Court held a two-day sentencing hearing.[11]  At that hearing,

---

[8] ECF No. 180.

[9] ECF 363.

[10] ECF No. 217, 219, 223, 225, 229, 230.

[11] ECF No. 231, 238.

ORDER - 7

Investigator Craig Tom testified to the calculation of the loss attributed to the fraudulent activities of Mr. Anwar for which he was found guilty by the jury.[12]  The Court also heard victim impact statements from Heather Ellingford, Justina Bruinekool, and Daisy Garduno.[13] Following that testimony and argument of counsel, the Court followed the standard protocol for sentencing including calculation of the advisory Sentencing Guidelines and recitation of the sentencing factors required by both statute and the Guidelines and accepted the Pre-Sentence Investigation Report and offered Mr. Anwar the opportunity to speak directly to the Court before the Court imposed a sentence. After inquiry by the Court, Mr. Anwar declined to speak other than to say that he wanted to appeal. The Court saw or heard nothing at that time that indicated Mr. Anwar was not acting of his own free will.

On October 8, 2020, Mr. Anwar filed a Notice of Appeal.[14]  In his appeal pleadings, Mr. Anwar cited two issues: ineffective assistance of

---

[12] ECF No. 238.

[13] *Id.*

[14] ECF. No. 253.

ORDER - 8

counsel and sentencing error by the Court.  The Ninth Circuit Court of Appeals affirmed the conviction and sentence of Mr. Anwar while noting that he retained his right to file a Motion for A Writ of Habeas Corpus to address the issue of ineffective assistance of counsel he had included in his appeal.[15]

On June 6, 2023, Plaintiff filed the present Motion to Vacate, Set Aside or Correct Sentence.[16] The Government filed its Response on November 20, 2023.[17] Mr. Anwar asserted in his Motion that his prior convictions should be set aside, and he laid out fifteen subclaims in Ground One alleging ineffective assistance of counsel prior to and during trial and at sentencing; and alleged as Ground Two that

---

[15] ECF No. 287.

[16] ECF No. 306.  Although 28 U.S.C. § 2255 provides that a party may file Petition for Writ of Habeas Corpus, in the Eastern District of Washington the case is commenced by the filing of Motion to Vacate, Set Aside or Correct Sentence and the court will use the term "Motion" as a reference.

[17] ECF No. 322.

ORDER - 9

government witnesses committed fraud upon the court by presenting perjured testimony during his trial.[18]  On June 5, 2024, Mr. Anwar's counsel advised the Court that despite multiple inquiries to Plaintiff's trial/sentencing counsel, Mr. Metro, there had been no file produced and that the present Section 2255 Motion had been drafted based on Mr. Anwar's memory rather than a review of the case file.[19] The Court entered an order directing that the file be provided and was later advised by Mr. Anwar's habeas counsel that it was received.[20] In an Order dated June 13, 2024, the Court denied the Motion as to Ground Two and also denied twelve of the subclaims at Ground One, leaving Ground One subclaims 2, 11, and 15 to be adjudicated herein.

On September 17, 2024, the Court commenced a two-day evidentiary hearing, during which Mr. Anwar and Mr. Metro, his trial/sentencing counsel appeared, and testified under oath.[21]

---

[18] *Id.*

[19] ECF No. 340.

[20] ECF Nos. 340, 345.

[21] ECF Nos. 351, 353, 354, 355.

Mr. Tornabene, who was government counsel during trial and sentencing, and Investigator Tom also testified.[22]  Following the evidentiary hearing, the parties submitted post-hearing arguments.[23]

## B.   Applicable Law

To prevail on an ineffective assistance of counsel claim, a defendant must prove both that his "counsel's representation fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[24]

To warrant relief under Section 2255 a petitioner must establish a constitutional or jurisdictional error, or a "fundamental defect which inherently results in a complete miscarriage of justice [or] an omission inconsistent with the rudimentary demands of fair procedure."[25] "The

---

[22] *Id.*

[23] ECF Nos. 359, 360, 361.

[24] *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

[25] *United States v. Timmreck*, 441 U.S. 780, 783 (1979) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

ORDER - 11

proper measure of attorney performance' when evaluating a claim that the Sixth Amendment right to effective assistance of counsel was violated is 'reasonableness under prevailing professional norms.'"[26]

To sustain a claim for ineffective assistance, a defendant has the burden of satisfying *Strickland*'s two-prong test.[27]  Under this test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair **trial**, a **trial** whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.[28]

---

[26] *May v. Ryan*, 954 F.3d 1194, 1203 (9th Cir. 2020) (quoting *Strickland*, 466 U.S. at 688).

[27] *Strickland*, 466 at 687.

[28] *Id.*

Recently, the Ninth Circuit Court of Appeals reiterated that under *Strickland*, counsel's strategic judgments are owed heavy deference.[29]

A court addressing a claim of ineffective assistance of counsel need not address both prongs of the *Strickland* test if a defendant's showing is insufficient as to any one prong.[30]

## C.    Analysis

The Court will address each of the remaining grounds argued by Mr. Anwar.

### 1.    Ground 1, Subclaim 2 – Failure to Adequately Advise of Plea Offer

In considering this issue, it is noteworthy that Mr. Anwar's Opening Brief in his appeal of his conviction and sentence filed May 13, 2021, with the Ninth Circuit, identified two issues: the trial conduct of

---

[29] *United States v. Osorio-Arellanes*, 112 F.4th 647, 661 (9th Cir. 2024).

[30] *Strickland,* 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

Mr. Metro and the sentence imposed by this Court. It did not assert that Mr. Metro mislead him as to the strength of the government's case, did not assert that he had repeatedly told Mr. Metro that he wanted to plead guilty and did not assert that he had signed and delivered a signed Plea Agreement to be filed with the Court.[31] In his Motion to Vacate, Set Aside or Correct Sentence and supporting Declaration dated August 14, 2023,[32] Mr. Anwar swore that if he had

---

[31] ECF No. 314-1.

[32] ECF No. 314, 321. On August 15, 2023, Mr. Anwar filed a Declaration in Support of Motion, with 9 attachments at ECF No. 314.  The document was dated August 14, 2023, and bore the signature of Sami Anwar accompanied by the initials JE.  On October 11, 2023, Mr. Anwar's counsel filed an Amended Declaration in Support of Motion (Personally signed copy of Previously Submitted Declaration) without attachments at ECF No. 321. The contents of the Declaration at ECF No. 321 are identical to the previously submitted document with the exception that it was dated September 14, 2023, and is signed by Mr. Anwar.

ORDER - 14

known the strength of the Government's case and the true length of the possible sentence, he would have accepted a plea agreement offered prior to trial. While he does not identify the plea agreement by date or even an approximation of a time, he swears he would have accepted it but for the deficient advice of Mr. Metro. He swore as follows:

> My attorney, Gary Metro, discussed this plea offer with me. However, he did not adequately inform me of the risks and benefits associated with taking the plea. Among other things, he did not inform me of the extent of the testimony that the government would present against me at trial, including the testimony of a large number of my former employees, and did not inform me that Dr. Cheta Nand, Dr. Lucien Megna, and others would actually contradict the representations they had made to federal regulators in emails and other communications. He minimized the strength of the government's case in other ways as well. He also informed me that, even if convicted at trial, I would likely receive a sentence not much greater than five years. He did not tell me that my sentencing guideline range would be more than 20 years and that the court might go above even that. In other words, he advised me that there was little advantage in accepting the plea offer and misled me both as to my likelihood of being convicted and the likely sentence I would face if so.[33]

---

[33] ECF No. 314, pg. 4.

ORDER - 15

Again it is noteworthy that Mr. Anwar's sworn Declarations[34] did not assert that the Government had made a reverse-proffer presentation in May 2019 outlining the strength of the case against him and offering a plea deal, did not assert that after that presentation he had repeatedly told Mr. Metro that he wanted to plead guilty, and did not assert that in October 2019 before trial he had actually signed the proposed Plea Agreement and delivered it to Mr. Metro for filing.

    a.   *Mr. Anwar's Testimony at the 2255 hearing*

At the hearing on his 2255 Motion, Mr. Anwar testified contrary to his sworn Declaration(s), ECF 314 and 321, by testifying that following the reverse proffer of May 2019 he repeatedly told Mr. Metro that he wanted to enter a plea of guilty because of the strength of the Government's evidence.[35] Mr. Anwar for the first time then testified that on October 26, 2019, he had actually signed the existing Plea Agreement and gave it to Mr. Metro who failed to give it to either the

---

[34] ECF No. 314, 321

[35] ECF No. 354 (Habeas Evid. Hrg. Tr. at 253:5–17).

Government or file it with the Court.[36] In contrast, Mr. Metro testified that Mr. Anwar did not accept the Plea Agreement offered at the reverse proffer and that Mr. Anwar wanted to plead only to a misdemeanor which Mr. Metro advised him the Government would not agree to.[37] Mr. Metro also testified that he reviewed the Power Point slides from the reverse proffer again with Mr. Anwar after they had been sent by Mr. Fruchter as well as the later Plea Agreement of September 2019 offered by the Government.[38] Mr. Metro testified that Mr. Anwar refused to accept that Plea Agreement.[39] Mr. Metro also denied that Mr. Anwar signed the Plea Agreement and denied that he had ever received a signed Plea Agreement from Mr. Anwar.[40]

An examination of the email exchange among the Government attorneys and Inspector Tom and Mr. Metro document the ongoing

---

[36] ECF No. 354 (Tr. at 256:7–257:12; 268:5–269:18).

[37] *Id.* (Tr. at 29:16–31:9).

[38] *Id.* (Tr. at 34:7–35:9).

[39] *Id.*

[40] *Id.* (Tr. at 109:15–110:19).

efforts to reach a plea deal.[41]  For example, on October 13, 2019, Mr. Metro emailed Mr. Fruchter and Mr. Tornabene, stating that Mr. Anwar was willing to plead guilty to Count 47, although he was aware that was not offered by the Government in "either plea offer."[42] There is no indication from either party that any other discussion regarding plea negotiations took place.

There is a significance to the fact that Mr. Anwar wished to limit any guilty plea to Count 47. Count 47 of the indictment charged

_____

[41] Pl. Habeas Evid. Hrg. Ex. 1 (May 20, 2019 email from Investigator Tom to Mr. Fruchter); Pl. Habeas Evid. Ex. 2 (August 9, 2019 email from Mr. Fruchter to Mr. Metro); Pl. Habeas Evid. Ex. 11 (August 9, 2019 email from Mr. Fruchter to Mr. Metro); Pl. Habeas Evid. Ex. 14 ( September 26, 2019 email from Mr. Fruchter to Mr. Metro with proposed plea agreement); Pl. Habeas Evid. Ex. 3 (October 11, 2019 email from Mr. Metro to Mr. Fruchter); Pl. Habeas Evid. Ex. 12 (October 11, 2019 email from Mr. Tornabene to Mr. Metro); Pl. Habeas Evid. Ex. 13 (October 14, 2019 email from Mr. Fruchter to Mr. Metro).

[42] Def. Habeas Evid. Hrg. Ex. 112.

Mr. Anwar with Furnishing False or Fraudulent Material Information, in violation of 21U.S.C. 843(a)(4)(A). Section 843(a)(4)(A) is a Class D Felony, which carries a maximum penalty of not more than a 4-year term of imprisonment, a fine not to exceed $250,000, not more than a 3-year term of supervised release; and a $100 special penalty assessment. Count 1 and other counts of the indictment that Anwar did not want to accept a guilty plea to were Class C felonies or higher. In Washington, there are three classes of felonies, A, B, and C, and the Revised Code of Washington, RCW 9A.20.010, further designates that any crime not designated a class A, B, or C felony and punishable by a fine of more than $1,000 and imprisonment of more than 90 days shall be classified a gross misdemeanor. Thus, a plea to Count 47 would constitute a plea to a misdemeanor for purposes of debarment in participation in FDA drug trials and would not trigger an automatic bar to Mr. Anwar's participation in future drug trials, in addition to the fact that Count 47 limits the amount of restitution which he would be required to pay.

The Court takes judicial notice of the Federal Register notice that the FDA debarred Mr. Anwar on January 27, 2023.[43]

b.    *Summary*

The Court concludes that the testimony of Mr. Metro and the testimony of Mr. Tornabene and Inspector Tom on all material issues was credible and supported by exhibits admitted. As to Mr. Anwar, the Court finds that his testimony was not credible on any material issue. The testimony elicited and exhibits admitted establish that Mr. Anwar's decision to go to trial was his and his alone because the Government would not agree to allow him to plead to Count 47, which could be treated as a misdemeanor. Mr. Anwar has not established ineffective assistance of counsel.

Mr. Metro testified that he had been paid two-thirds of his fee and realized that Mr. Anwar would not likely be able to pay the balance, but it is his policy to never walk away from a client and a case in such circumstances.[44]  While it was not in his financial interest to

---

[43] ECF No. 362-1.

[44] ECF No. 354 (Habeas Evid. Hrg. Tr. 61:4–63:1).

try the case, he continued to zealously represent Mr. Anwar because Mr. Anwar refused to accept the Plea Agreement.[45] There was no hint of animosity toward Mr. Anwar in his testimony. Throughout his examination by Mr. Fruchter and Mr. Edelstein, Mr. Metro's language and manner and tone were always professional and credible on all material points.

The overwhelming weight of the evidence presented at the hearing establishes that Mr. Metro met his professional responsibility to Mr. Anwar during his representation.  It establishes that no plea offer was ever accepted by Mr. Anwar and that the decision not to accept the plea offers made rested solely with Mr. Anwar, who wished to plead to either a misdemeanor or a class D felony that could be treated as a misdemeanor.  As such, Mr. Anwar has not met his burden to establish ineffective assistance of counsel as to this issue.

---

[45] *Id.*

## 2. <u>Ground 1, subclaim 11 – Error in advising Petitioner not to allocute</u>

At sentencing, after listening to the testimony and the statements of counsel, and reviewing the Presentence Investigation Report, the Court offered Mr. Anwar the opportunity to make a statement before being sentenced.[46]

The Court typically observes the demeanor of the defendant when offered the opportunity to speak before being sentenced to ensure that the defendant understands the right to speak directly to the Court and is making a knowing decision. This is the more sensitive an issue when the sentencing follows a jury trial at which the defendant did not testify and was found guilty. As the sentencing transcript shows, the Court offered Mr. Anwar the opportunity to speak before being sentenced, an opportunity he declined. Had there been any hint of an issue when Mr. Anwar declined to make a statement at sentencing, the Court would have questioned Mr. Anwar further to be certain that

---

[46] ECF No. 281 (Sent. Hrg. Tr. at 290).

Mr. Anwar understood his right to speak and was making an independent decision not to do so.

Based on some cryptic handwritten notes on a piece of paper of uncertain date and uncertain circumstance,[47] Mr. Anwar testified at the habeas hearing that but for Mr. Metro's advice not to make a statement at sentencing, he would have expressed remorse for his actions and those of his employees.[48]  Mr. Anwar therefore claims that he received ineffective assistance of counsel at sentencing. He cites no case holding that it is ineffective assistance of counsel to advise a defendant who did not testify at trial and was found guilty by the jury to decline to speak at sentencing. He cites no case that sets the standard to apply to that issue in the context of a *Strickland* analysis.

Mr. Metro testified that he does not remember discussions with Mr. Anwar about whether to allocute or the date or circumstances when the handwritten note admitted at the hearing was written.[49]  He

---

[47] Def. Habeas Evid. Hrg. Ex. 1.

[48] ECF No. 355 (Habeas Hrg. Tr. 325–327).

[49] ECF No. 354 (Evid. Hrg. Tr. at 113–14).

ORDER - 23

also testified that the decision of whether to make a statement at sentencing was solely the choice of Mr. Anwar.[50]  Importantly, as a very experienced criminal defense attorney who has tried complex criminal cases in this district at which this Court presided, Mr. Metro testified that he has rarely seen defendants convicted at trial benefit from making a statement at sentencing.[51]  That is consistent with this Court's experience over the years during which it has sentenced defendants in criminal cases following a jury verdict of guilty.

The government cites as persuasive the Tenth Circuit decision in *United States v. Abston*,[52] an appeal from a denial of a hearing on a Motion for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2255. The Tenth Circuit held, in pertinent part, that the petitioner therein failed to show anything in the record that the court reacted negatively to his failure to express remorse and that the petitioner failed to "show why there is a reasonable probability that any allocution by him, remorseful

---

[50] *Id.* (Evid. Hrg. Tr. at 115).

[51] *Id.* (Evid. Hrg. Tr. at 115–16).

[52] 401 Fed. App'x 357, 366 (10th Cir. 2010).

ORDER - 24

or otherwise, would have resulted in a significantly lesser sentence."[53] It is this Court's view that *Abston* articulates a sensible standard to apply here. This case does differ from *Abston*. *Abston* was an appeal from a denial of a habeas hearing while a habeas hearing was granted on these remaining issues in this case; and there was no arguable evidence of advice of counsel on allocution in *Abston,* while Mr. Anwar argues the cryptic notes here are evidence of counsel about allocution.

The Court carefully observed the testimony of Mr. Anwar and Mr. Metro including their choice of language, tone, facial expressions, and manner and context. The Court finds Mr. Metro credible that it was Mr. Anwar's decision not to speak at the time of sentencing. The Court also finds that, even had Mr. Anwar stated at sentencing as he testified to at this habeas hearing, the Court would not have sentenced him to a lesser sentence. A reading of the trial record is dramatic evidence of his determination to engage in misrepresenting the activities of self-created LLC's for the purpose of obtaining payment for fraudulently conducted human clinical research trials, conducted using

---

[53] *Id.* at 366.

ORDER - 25

falsified human clinical research trial data that was supported by forged signatures of licensed physicians, and to coerce others to assist in those criminal acts, as well as to threaten them and falsely accuse them of misconduct and crimes when they refused or withdrew from employment.

Having listened to all the trial testimony and the sentencing proceeding, as well as reviewed the parties' filings in connection with those proceedings, the Court disbelieves Mr. Anwar's testimony at this habeas hearing that he followed the purported advice of Mr. Metro in declining to speak at sentencing. At the time of sentencing, this Court specifically advised Mr. Anwar about his right to allocution and Mr. Anwar stated that he did not wish to speak. The Court was satisfied then and now, given the testimony at this hearing, that he personally made the decision not to speak at the time of sentencing.

In passing, the Court notes that there are many factors that a defendant must consider before speaking at sentencing. When a defendant did not testify at trial and the evidence of guilt was extensive and compelling, a defendant must consider whether an admission and a statement of contrition might impact an appeal or

might be disbelieved by the trial court thereby negatively impacting sentencing or might have collateral consequences such as providing the FDA with additional grounds to enter an order of debarment. And there are certainly other potential consequences such as disgrace in the eyes of family and friends. Here, when given the specific opportunity for an allocution at sentencing, Mr. Anwar declined. The Court is convinced that it was his decision alone to decline to speak. Given the overwhelming evidence of his guilt at trial, the Court concludes that nothing he could have said then—or that he testified to in this hearing—would have altered the sentence of this Court. Accordingly, he has met neither prong of the *Strickland* standard.

### 3. Ground 1, Subclaim 15 – Cumulative Error

Because Mr. Anwar did not meet his burden to prevail as to Ground 1, subclaims 2 and 11, his claim of cumulative error does not survive and is rendered moot.  Accordingly, the Court denies Mr. Anwar's Motion as to this claim.

## D.     Certificate of Appealability

An appeal of a final order in a section 2255 habeas proceeding, such as this, may not be taken unless a circuit justice or judge issues a

certificate of appealability.[54] The Court elects not to issue a certificate of appealability because Mr. Anwar has not "made a substantial showing of the denial of a constitutional right."[55]  The Court carefully considered Mr. Anwar's claims and afforded him the opportunity to appear for an evidentiary hearing as to three of the counts alleged. The claims raised required a resolution of witness credibility, rather than law, and as was explained above, the Court determined, after careful consideration of the evidence and witness testimony, that Mr. Anwar's statements are not credible and lack merit. Therefore, a certificate of appealability will not issue.

**E.    Conclusion**

Accordingly, **IT IS HEREBY ORDERED**:

1.    Petitioner Sami Anwar's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to Title 28 U.S.C. § 2255, **ECF No. 306**, is **DENIED** as to Ground 1, subclaim 2; Ground 1, subclaim 11; and Ground 1, subclaim 15.

---

[54] 28 U.S.C. § 2253.

[55] *Id.* § 2253(c)(2).

2.      A Certificate of Appealability will not issue.

3.      The Clerk's Office is to close this file and the related civil case file.

**IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order and provide copies to all counsel and the U.S. Probation Office.

**DATED** this  4th  day of April 2025.

_____
EDWARD F. SHEA
Senior United States District Judge

ORDER - 29